UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN ALLIANCE BANK,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>　　　　　Defendant. | Case No. 15-cv-03429-PSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>**(Re: Docket No. 11)** |

　　　　In 2012, Defendant National Union Fire Insurance Company of Pittsburgh, PA, issued a commercial crime insurance policy to CHB Capital Partners.[1]  The policy named several other parties as insureds, including Sorrento Networks I, Inc., and its German subsidiary, Sorrento Networks GmbH.[2]  In January 2014, Sorrento's CEO and president announced that the company was going out of business, but the executives asked all of their employees worldwide to leave company property where it was.[3]  A month later, Sorrento's president arrived at its German subsidiary's offices in Stuttgart, only to find that almost all of that property was missing.[4]

　　　　Sorrento is long gone, but Plaintiff Western Alliance Bank—which purports to hold a security interest in the missing property—still looks to collect on the insurance policy.[5]  National

---

[1] *See* Docket No. 1 at ¶ 9; Docket No. 1-3 at 1.

[2] *See* Docket No. 1 at ¶¶ 5-6, 9; Docket No. 1-3 at 23.

[3] *See* Docket No. 1 at ¶ 12.

[4] *See id.* at ¶¶ 12-15.

[5] *See id.* at ¶¶ 27-50.

1
Case No. 15-cv-03429-PSG
ORDER GRANTING MOTION TO DISMISS

Union objects to not just the merits of the claim but also to Western Alliance's standing to press it.[6]  On the latter point, the court agrees.  National Union's motion to dismiss[7] is GRANTED, albeit with leave to amend.

## I.

Western Alliance traces its interest in the missing property back to 2011.  In April of that year, an entity called Bridge Bank, N.A. issued a loan to Sorrento.[8]  As collateral, Sorrento gave Bridge Bank a continuing security interest in all of Sorrento's personal property, including its inventory, test equipment, computer equipment, commercial tort claims and insurance proceeds.[9]  Bridge Bank perfected its security interest by filing a financing statement with the Delaware Department of State on February 11, 2011.[10]  The loan agreement also authorized Bridge Bank to act on Sorrento's behalf in collecting any money owed to Sorrento and prosecuting any claims that Sorrento might have.[11]  Western Alliance, as the successor in interest to Bridge Bank, now seeks to do just that with respect to Sorrento's claims for the losses it suffered in 2014.[12]

National Union's crime policy took effect on September 1, 2012.[13]  The policy provided $1,000,000 of coverage per occurrence for several different forms of crime, including employee theft and theft of money and securities inside the premises.[14]  National Union promised to "pay for

---

[6] *See id.* at ¶ 25.

[7] *See* Docket No. 11.

[8] *See* Docket No. 1 at ¶¶ 1, 7.

[9] *See id.* at ¶ 7; Docket No. 1-1 at 5, 8.

[10] *See* Docket No. 1 at ¶ 7; Docket No. 1-2.

[11] *See* Docket No. 1-1 at 5.

[12] *See* Docket No. 1 at ¶ 1.  Sorrento defaulted on its loan in February 2014.  *See* Docket No. 1-5.

[13] *See* Docket No. 1 at ¶ 9; Docket No. 1-3.

[14] *See* Docket No. 1-3 at 3.

2
Case No. 15-cv-03429-PSG
ORDER GRANTING MOTION TO DISMISS

loss of or damage to . . . 'other property' resulting directly from 'theft' committed by an 'employee'" and "for loss of or damage to 'other property'" resulting from either a "robbery" or a "safe burglary."[15] Most notably for present purposes, the policy included a non-assignment clause, which said that the insured's "rights and duties under this policy may not be transferred without [National Union's] written consent."[16] It also said that "this policy is for [the insured's] benefit only," that "[i]t provides no rights or benefits to any other person or organization" and that "[a]ny claim for loss that is covered under this policy must be presented by" the insured.[17]

Western Alliance nevertheless brought this suit in its own name.[18] Its complaint alleges that National Union has breached the terms of the insurance contract, as well as the covenant of good faith and fair dealing, by refusing to pay out on the claim.[19] Western Union argues that its security interest in the missing property entitles it to exercise Sorrento's rights with respect to the contract.[20] It also seeks a declaratory judgment that National Union is required to pay Bridge Bank, and thus Western Alliance, the full amount of the claim.[21]

**II.**

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[22]

---

[15] *Id.* at 3-4. The policy specifically defined each of these terms. *See id.* at 16-18. In particular, "other property" meant "any tangible property other than 'money' and 'securities' that has intrinsic value." *Id.* at 18.

[16] *Id.* at 14.

[17] *Id.* at 13.

[18] *See* Docket No. 1.

[19] *See id.* at ¶¶ 27-35, 41-50.

[20] *See id.* at ¶ 30.

[21] *See id.* at ¶¶ 36-40.

[22] *See* Docket Nos. 8, 10.

3
Case No. 15-cv-03429-PSG
ORDER GRANTING MOTION TO DISMISS

## III.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[23] When a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[24] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[25] Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[26] Dismissal with prejudice and without leave to amend is appropriate if it is clear that the complaint could not be saved by amendment.[27]

At this stage of the case, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[28] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference and matters of which the court may take judicial notice.[29] However, the court need not accept as true

---

[23] Fed. R. Civ. P. 8(a)(2).

[24] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[26] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[27] *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[28] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[29] *See id.* National Union has requested that the court take judicial notice of certain documents from the website of the Colorado Secretary of State. *See* Docket No. 11. Western Alliance does not object. *See* Docket No. 13. Because these are public records of government entities, and no party disputes their authenticity or accuracy, the court takes judicial notice of the documents. *See* Fed. R. Evid. 201(b) (allowing the court to take judicial notice of a fact if it "is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities (the school districts), and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein.").

allegations that are conclusory, unwarranted deductions of fact or unreasonable inferences.[30] Western Alliance's claims do not satisfy these standards.

As an initial matter, the parties disagree over which state's law governs this dispute. Both CHB—the company that took out the insurance policy—and Sorrento had their headquarters in Colorado,[31] so National Union urges the court to apply Colorado law. In its complaint, however, Western Alliance relies on California statutes.[32] The states differ in two relevant respects. In Colorado, a creditor may not obtain a security interest in an insurance policy or in a claim under an insurance policy.[33] California's version of the UCC does not contain this exception.[34] Colorado also departs from a number of states by enforcing non-assignment clauses in insurance contracts even against post-loss assignments—attempts to assign policy benefits after losses already have accrued.[35] California, on the other hand, voids any "agreement not to transfer the claim of the insured against the insurer after a loss has happened" so long as the agreement was "made before the loss."[36] The court need not resolve this issue because, as explained below, the choice of law does not affect the result.

---

[30] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Twombly*, 550 U.S. at 561 (holding that "a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[31] *See* Docket No. 1-2 at 1, 20; Docket No. 1-3; Docket No. 11-1, Ex. A; Docket No. 1-2; Docket No. 1-3; *id.*, Ex. D.

[32] *See* Docket No. 1 at ¶¶ 26, 30.

[33] *See* Colo. Rev. Stat. § 4-9-109(d)(8) (providing that the article of the Colorado Uniform Commercial Code governing secured transactions does not apply to "[a] transfer of an interest in or an assignment of a claim under a policy of insurance," although certain other sections "apply with respect to proceeds and priorities in proceeds").

[34] *See* Cal. Com. Code § 9109(d); *see also* Cal. Com. Code § 9109 cmt. 13 (Assembly Committee Comment to 1999 addition) (explaining the reasons for omitting this UCC exclusion).

[35] *See Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1053-55 (Colo. 1994).

[36] Cal. Ins. Code § 520. The statute is subject to several exceptions, but the parties agree that none of them applies here. *See id.* § 10129 (excluding certain types of policies).

*First*, Western Alliance argues that its security interest in the missing property gave it the right to collect what was owed to Sorrento under the crime policy. As support, Western Alliance cites UCC provisions adopted by both California and Colorado that give secured creditors an interest in any identifiable "proceeds" of collateral.[37] Both states further define "proceeds" to include "insurance payable by reason of the loss . . . of, . . . or damage to, the collateral."[38] National Union contends that, at least in Colorado, Western Alliance could not have obtained a security interest in the insurance policy or a claim under it. But that is not what Western Alliance claims. It never sought to obtain a security interest in the policy itself. Instead, Western Alliance has an interest in the *proceeds* from Sorrento's policy—which includes any amount that National Union might owe to Sorrento.

But Western Alliance's right to the proceeds is not the same as a right to bring a claim on behalf of Sorrento.[39] "An insurance policy is a personal contract between the insurer and insured. Therefore, the mortgagee of an insured property has no interest in a policy obtained by [a] mortgagor in the mortgagor's name and for his or her own benefit."[40] One exception to this general rule may give "a secured creditor . . . an equitable right to bring an action against [an insurer] under [an insurance] policy."[41] However, this exception arises only "[i]f [the] mortgagor

---

[37] Cal. Com. Code § 9315(a)(2); Colo. Rev. Stat. § 4-9-315(a)(2).

[38] Cal. Com. Code § 9102(a)(64)(C); Colo. Rev. Stat. § 4-9-102(a)(64)(C).

[39] The secured loan did grant Bridge Bank power of attorney to act on Sorrento's behalf, *see* Docket No. 1-1 at 5, but Western Alliance is suing here in its own name. A party bringing suit pursuant to a power of attorney must still prosecute the action "in the name of the real party in interest." Fed. R. Civ. P. 17(a); *see Airlines Reporting Corp. v. S & N Travel, Inc.*, 857 F. Supp. 1043, 1046-47 (E.D.N.Y. 1994) ("A person authorized to bring suit solely on the basis of a power of attorney is not a real party in interest; courts have uniformly denied such a party the right to sue in its own name.").

[40] 4 Couch on Insurance § 65:82. The treatise defines "mortgage" broadly to include "any type of secured debt agreement including mortgages, deeds of trust, and security agreements or chattel mortgages." *Id.* § 65:1.

[41] *Fruehauf Corp. v. Royal Exch. Assurance of Am., Inc.*, 704 F.2d 1168, 1171 (9th Cir. 1983).

agrees to have [the] mortgagee named as an additional insured or loss-payee" on the policy.[42]

Western Alliance has alleged no facts that might show that Bridge Bank asked CHB to obtain the insurance policy or that CHB took out the policy for the benefit of Bridge Bank. Western Alliance's security interest therefore does not confer standing to bring a claim.[43]

---

[42] *Id.* at 1171-72; *see also Brown v. First Nat'l Bank of Dewey*, 617 F.2d 581, 583 (10th Cir. 1980) ("[A]n important exception to the [personal contract] rule arises if the mortgagor promises to insure the property for the mortgagee's benefit: even though the insurance proceeds are not made payable to the mortgagee, the latter nevertheless acquires an equitable lien on the proceeds to the extent of the indebtedness."); *Alexander v. Sec.-First Nat'l Bank of L.A.*, 7 Cal. 2d 718, 724 (1936) ("In the absence of special provisions in the lease . . . neither lessor nor lessee ordinarily has an interest in the proceeds of insurance obtained by the other on his own separate insurable interest. . . . But if there is an agreement for insurance between parties standing in these relationships, and the party obligated . . . procures insurance payable to himself alone, the other party for whose benefit the agreement was made has an equitable lien on the proceeds of such insurance."); *Indus. Nat'l Bank of E. Chi., Ind. v. Employers Cas. Co. of Dall., Tex.*, Case No. 85-cv-0327, 1986 WL 1008, at *4-6 (N.D. Ill. Jan. 3, 1986) (explaining legal theories by which a creditor may proceed directly against an insurer); 4 Couch on Insurance § 65:82 ("[T]he mortgagee of an insured property has no interest in a policy obtained by mortgagor in the mortgagor's name and for his or her own benefit. However, if the mortgagor covenants to keep the property insured as further security for payment of a mortgage debt, then the mortgagee may be entitled to an equitable lien upon the insurance proceeds, even where the policy is in the name of the mortgagor alone."). *But see Paskow v. Calvert Fire Ins. Co.*, 579 F.2d 949, 952 (5th Cir. 1978) ("[W]hen a mortgagor has procured an insurance policy pursuant to such an agreement the mortgagee has an equitable lien on the insurance fund. . . . The mortgagee cannot obtain the fund by proceeding directly against the insurer.").

[43] *See Zaghi v. State Farm Gen. Ins. Co.*, 77 F. Supp. 3d 974, 979 (N.D. Cal. 2015) (dismissing plaintiff's breach of contract cause of action against an insurer because plaintiff was not named in the insurance policy); 4 Couch on Insurance § 65:84 ("Absent a duty [to obtain insurance to protect the mortgagee], a lien can only be predicated upon the existence of an intent of the mortgagor that the mortgagee should be benefited. By hypothesis, if such an intent is lacking, then no equitable lien arises when the mortgagor obtains a policy for his or her own protection."); *cf. BNY Midwest Trust Co. v. Nat'l Union Fire Ins. Co of Pittsburgh, PA*, 213 F. App'x 563, 567 (9th Cir. 2006) ("BNY's security interest in the fidelity bond is simply a security interest in any *proceeds* of the fidelity bond. Therefore, the security interest does not confer standing to bring a claim for losses suffered by parties other than the insured.").

Cal. Com. Code § 9607 and its Colorado counterpart, Colo. Rev. Stat. § 4-9-607, do not change this analysis. These sections "do[] not determine whether an account debtor . . . or other person obligated on collateral owes a duty to a secured party." Cal. Com. Code § 9607(e); Colo. Rev. Stat. § 4-9-607(e). Instead, they "establish[] only the baseline rights of the secured party *vis-a-vis the debtor*." UCC § 9-607 cmt. 6. Western Alliance has not cited any case law from any state interpreting this provision to grant a secured creditor a right of action against an insurer.


Nor can Western Alliance sue as an assignee of Sorrento's benefits under the policy, for the simple reason that Sorrento never assigned Western Alliance its contractual rights. "Insurance policies are contracts and, therefore, are covered in the first instance by the rules of construction applicable to contracts."[44] The right to payment under a contract may be assigned in both California and Colorado.[45] However, an assignment of rights under a contract "logically requires an existing right in the assignor," meaning that a party cannot assign away rights arising out of a nonexistent contract.[46] Here, Sorrento borrowed money from Bridge Bank in April 2011,[47] over a year before the National Union policy took effect.[48] Sorrento could not have assigned away its rights under an insurance policy that it had not yet purchased.

Moreover, the non-assignment clause of the insurance policy barred any assignment that took place before the loss occurred. Plainly, the non-assignment clause, if operative, precluded Sorrento from assigning away its rights.[49] Under Colorado law, the clause was enforceable

---

[44] *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 666-67 (1995); *see Parrish*, 874 P.2d at 1055 ("Insurance contracts are construed in accordance with the general law of contracts.").

[45] *See Applera Corp. v. MP Biomedicals, LLC*, 173 Cal. App. 4th 769, 786 (2009) (citing Cal. Civ. Code §§ 954, 1044); *Parrish*, 874 P.2d at 1052.

[46] *Allstate Ins. Co. v. Med. Lien Mgmt.*, 2015 CO 32, ¶ 12; *see also Orkow v. Orkow*, 133 Cal. App. 50, 51 (1933) ("So far as the assignment purported to transfer a portion of earnings not based upon present employment or an existing contract it was void."); Restatement (Second) of Contracts § 330 (Am. Law. Inst. 1981) ("A contract to make a future assignment of a right, or to transfer proceeds to be received in the future by the promisor, is not an assignment.").

[47] *See* Docket No. 1-1 at 1.

[48] *See* Docket No. 1-3 at 1.

[49] *See id.* at 13-14 (providing that Sorrento's "rights . . . under the policy" could not "be transferred without [National Union's] written consent" and that "[a]ny claim for loss . . . must be presented by" Sorrento). Western Alliance cites *Sable Cove Condominium Ass'n v. Owners Insurance Co.*, but the insurance policy in that case did not include the second clause above. *See* Case No. 14-cv-00912, 2014 WL 4398668, at *3-4 (D. Colo. Sept. 5, 2014). That clause is significant because it bars assignment not only of rights under the policy but also claims derived from the policy. *Cf. id.* at *3 (distinguishing between assignments of "[t]he policy or portions thereof" and assignments of benefits under the policy).

8

Case No. 15-cv-03429-PSG
ORDER GRANTING MOTION TO DISMISS

against any assignment, either before or after the loss.[50] In California, non-assignment clauses are void only as to transfers that occur "after a loss has happened."[51] The purported assignment in this case took place in 2011, years before Sorrento suffered the loss. Under either California or Colorado law, the non-assignment clause barred any pre-loss assignment.

*Second*, Western Alliance's implied covenant claim fails for much the same reasons. In both California and Colorado, non-parties to insurance contracts cannot recover for the insurer's violations of the implied covenant of good faith and fair dealing.[52] Western Alliance points out that Colorado permits a "first-party claimant" to "bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit" for improper denials of insurance claims.[53] The statute defines "first-party claimant" broadly to include "an individual, corporation, association, partnership, or other legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy."[54] However, this cause of action "is in addition to, and does not limit or affect, other actions available by statute or common law."[55] Western Alliance has not asserted a claim under the Colorado statute. Instead, it has brought a common law claim for a breach of the covenant of good faith and fair dealing.[56] Without contractual privity or a valid assignment, Western Alliance may not pursue this claim.

---

[50] *See Parrish*, 874 P.2d at 1055.

[51] Cal. Ins. Code § 520. The word "loss" in the statute "refer[s] to a loss . . . that is covered by the insured's policy, and for which the insured may be liable." *Fluor Corp. v. Superior Court*, 61 Cal. 4th 1175, 1219 (2015).

[52] *See Schnacker v. State Farm Mut. Auto. Ins. Co.*, 843 P.2d 102, 104-05 (Colo. App. 1992); *Hatchwell v. Blue Shield of Cal.*, 198 Cal. App. 3d 1027, 1034 (1988) (quoting *Austero v. Nat'l Cas. Co.*, 62 Cal. App. 3d 511, 516-17 (1976)).

[53] Colo. Rev. Stat. §§ 10-3-1115(1)(a), -1116(1).

[54] *Id.* § 10-3-1115(1)(b)(I).

[55] *Id.* § 10-3-1116(4).

[56] *See* Docket No. 1 at ¶¶ 41-50.

### IV.

Defendants' motion to dismiss is GRANTED. Dismissal without leave to amend is only appropriate if it is clear that the complaint could not be saved by amendment such as after a plaintiff's "repeated failure to cure deficiencies by amendments previously allowed."[57] Because Western Alliance has had no opportunity to amend its complaint, the court cannot yet say that further amendment is futile. Leave to amend therefore is GRANTED. Western Alliance shall file any amended complaint within 21 days.

**SO ORDERED.**

Dated: February 18, 2016

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[57] *Eminence Capital*, 316 F.3d at 1052 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).